United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning and welcome to the Ninth Circuit. We have a few cases that we're going, we have six cases on the calendar this morning. Three of them have been submitted on the briefs. Those cases are case number 17-72595, Zeng v. Garland, 20-35861, Walters v. Kajikazi, and 20-36075, Jackaway v. Kajikazi. Those three cases will be submitted this morning without argument. We have three cases we're going to have argued this morning. The first of those cases is Braulick v. Corrections Corporation of America. And I believe, Mr. Piott, you're appearing by? No, he's in person. Okay, he's in person and we've got Mr. Adams appearing by virtually. So, Mr. Piott, start us off. Thank you, Your Honors, and may it please the Court, I respectfully request to retain one minute for rebuttal, if I may. Your Honors, I pose two very pressing questions in this case, and I'd like to respond directly to them immediately. First, I was asked whether or not the instruction to not object during closing arguments given to my client, the plaintiff in the matter and the appellant here, Mr. Braulick, was prejudicial. And I would suggest to the Court respectfully that it is prejudicial in two key ways. One, in procedure, and two, substantively. Procedurally, Mr. Braulick lost the benefit of a judicial instruction to the jury. There's a significant difference, as Your Honors well know, between a judge instructing a jury to disregard something and a prisoner plaintiff in t-shirt, jeans, and Crocs arguing to a jury that counsel, who has just made an improper statement, is now not based on the record. After a jury has sat through two days of trial and does not have the benefit of concurrently looking at exhibits as those arguments are being made. There's a reason that trial attorneys argue so vehemently for limiting instructions, instructions for adverse inference, instructions for spoliation. It's because the words that come from you on the bench, looking down upon the jury and down upon the courtroom, matter. Those instructions drive that performance and give those jurors the opportunity to then consider what they now know to be true and judge the person in the robe. That robe matters. Substantively, Mr. Braulick was at the end of three misrepresentations of the record that I think are crucial. Now, we've raised the first in the briefs, and upon receiving the second question from Your Honors, we then poured through even further through that closing argument. Counsel for the defense in this case, first and foremost, worked to dismiss what we would consider, what he wanted the jury to consider, a troublesome prisoner plaintiff and the claims he made to be dismissed because of that status. Second, he improperly and without evidentiary support bolstered and vouched for the defendant in this case. And maybe the most damaging and You were specifically in the record. Did the vouching occur? Yes, Your Honor. Multiple places, if I may. First, the first place that I found it to appear, I'm working from the citation of the record that we provided, 3 ER 372. Counsel said in his closing arguments that Ms. Didier has done hundreds, if not thousands, of blood draws. However, when Ms. Didier was questioned by her counsel at trial and asked, how many blood draws have you done? She answered with one word, hundreds, not thousands. He went on to say that she performed the blood draw with great care. How is that vouching? Isn't that just plain misstatement of the record? It may be, Your Honor, but I think it factors into, it is absolutely a misstatement of the record. Vouching, as he factors into the next misrepresentation, which is great care and with skill, that she used great care and skill. That's exactly what Ms. Didier testified to at 3 ER 374. Judge Bea, you raise a good point. There's absolutely overlap here between a misstatement of the record and vouching. There's a point where he goes on to say that she is the person, the type of, she is not the type of person she is. She did nothing to punish Mr. Browlick. That's improper character evidence, Your Honor, and had counsel been seated at that table, would have jumped from the table and objected an improper character bolster based on that three representative sequence by counsel of Nurse Didier. Counsel goes on in his closing arguments, and this is particularly troublesome, to testify as a policy expert, in particular, the policy of handling of grievances. Now, it's important to note that the policy itself was never entered into evidence. It was not entered by plaintiff. It was not ever entered by defendants. He goes on to testify, that's consistent with how the policy is supposed to work, and it was followed. The folks at the prison did things right, and that's at 3 ER 373. The folks at the prison did things right. He goes on to say they are not informed of that, meaning who complained, and the policy takes that into account. Now, Your Honors, counsel went on after closings, or I'm sorry, in the court proceeding to request supplemental jury instructions that were ultimately denied. He asked for the question to be specifically as to the instruction for handling of the policy by an institution, and he went on to say that's what the policy says multiple times to the trial judge, said to him, sir, why is the policy, or where is the policy? It's not in evidence, and he said, well, that's what the policy says, Your Honor, and he goes on, and that's at 3 ER 341. This is particularly troublesome because plaintiff had no opportunity to cross examine him as a witness. There was no expert proffered at trial. This policy became a point of contention between plaintiff and defendant in the case, and as this case wore on, only at the end did counsel sidestep and say, Ms. Didier, her testimony, his evidence, and so is Mr. Browlix, and then he sidesteps, and now he offers this effectively expert testimony as to the policy itself. I can only guess as to how he has that knowledge and the number of litigations he may handle in this regard, but the point is that it's not properly before the jury. It's not evidence, and most troublesome out of all of this is that Mr. Browlix was told he could not object, and that's particularly troublesome because this isn't just there's been the suggestion that, well, trial courts will give guidance to pro se litigants to help them through the process. Counsel, the objection was that to the evidence was that he complained about everybody, and in reply, Mr. Browlix said, that's not true. The doctor, I can't remember his name, Adams said that he was a very cooperative patient, so he cleaned that up right away, didn't he, after the claim was made? He attempted, Your Honor, to rebut, but that is still prejudicial because But that had been stricken? Had a contemporaneous objection been made? It could have been, Your Honor. In fact, that's particularly the remedy. At that point, and as Your Honors review the instructions that were given to the jury, there was no instruction as to dealing with stricken evidence because there had been no evidence stricken as a matter of objection in the case, but there would have been that instruction. Trial counsel would have been told that he could not refer to evidence outside the record. Mr. Browlix, in a very practical way, would have stood up in court, said he objected to something, and the court would have agreed with him, and that's important. Counsel, you say you have a few seconds left before you, but I wanted to ask, so most of the argument this morning is focused on, I think, as Judge Baio was kind of getting at, as I understood your argument from the brief, it was what Judge Baio was just talking about, but the argument this morning, is that argument made in your brief about all of the statements about the policy made in closing and such? They're not in the brief, Your Honor, and I'm happy to supplement to the extent the court would ask me to. They are raised particularly in response to the questions that were brought to my attention via DCF. Yes, Your Honor. Thank you, Counsel. Do you want to restart the rest of your time? Yes, please, Your Honor. Thank you. Mr. Adams, you may proceed. Thank you, Your Honors. May I please the court chat Adams for the defendants and appellees in this case? I'd also like to respond first to the court's questions, and the first question the court had was, assuming the district court erred in directing plaintiff not to object, was this error prejudicial? And I would assert that there actually was no error by the district court. Pardon me, Mr. Adams. I'm sorry, Judge Baio, do you want to go? What is possibly correct about saying that an objection cannot be made during closing argument? This is a regular feature of practically every trial I ever was in or read the transcript of. Well, Judge Graber, I agree it's unusual. However, this court's precedent indicates that contemporaneous objection can be made not only during the closing argument but between the time of a closing argument and the beginning of jury deliberation. Well, they can be, but the question is whether it is proper or permissible to, or even if we look at abusive discretion, to tell someone they cannot make an objection during the closing argument of the opposing side. And I understand that. So I guess the court's question, assuming that was error, and I'll The statement that was complained of in the briefs by Mr. Brawleck was the statement that was made that Mr. Brawleck complained about every medical provider that he saw. And that is an evidence-based statement. I understand that Mr. Brawleck tried to dispute that and say, well, we like Dr. Adams, but it's in the excerpts of record, page 216. During the He had filed a grievance. And in the grievance, he complained about medical staff asked that they be kept away from him. And so he was asked about that and was asked, was he complained about Dr. Bredisha, who was treating him at that time? And he said, no, he thinks it was more a nurse did here. But the specific question that was asked in follow-up was, are you frustrated with all the medical providers that you had, right? And his answer to that was, yeah, pretty much. I mean, it's pretty lousy medical treatment. That's all I can say about prison medical treatment. So he was asked, was he frustrated and was his written grievance complaining about all medical providers? His response wasn't, no, I was okay with Dr. Adams, like he said, in his closing and later at trial, his answer was, yeah, pretty much. And so the statement that was it was directly what he said. Counsel, I'd like you to respond also to the other items that were discussed today in oral argument. Is it a correct statement by opposing counsel that the policy that was being referred to was not in evidence? I don't believe that the grievance policy was entered into evidence. Okay. So how, how is it permissible to argue that the policy that wasn't in evidence was followed? So where judge Graber, where that policy information came up was in questioning to nurse did here, who is familiar with the policy. And she was asked why she would not be aware of a grievance that was filed against her. And in response, it was explained that the In fact, somebody else would generally respond to it. And there's a good reason for that. And that's because, well, regardless of the reason, is it your position that the argument relating to the policy did not go beyond what the testimony was about keeping the individual's name out of things? Yes, that is my position. So it sounds like your answer to question two is that there's nothing that would have been stricken had there been contemporaneous objections. There's nothing that I'm aware of that would have been stricken. I agree. Yes. And it's hard to go back right now and say without any objections made what evidence could have been stricken or would have been stricken. I do believe that the policy... Anything that went beyond what was in evidence would have been stricken. That's why the first question is, you know, important as well. If an argument is made that is not based on the record, but that goes outside the record, then presumably that would be stricken or where the judge would give some kind of contemporaneous, you know, limiting instruction to the jury at that point. No, I agree with that. However, I do not believe that that occurred in this case. For the two things that we've talked about already, right, the policy that was discussed with Nurse Didier, and unfortunately, I mean, the written policy wasn't introduced, something that came up at trial during the discussion, and I don't think the argument went beyond what was discussed with Nurse Didier, and it is something she had been familiar with to discuss. But then, yeah, Mr. Brawleck's own testimony that he was frustrated and his complaint was related to all of his medical providers. I mean, Mr. Brawleck's briefing discusses the words that were used, everybody saying that means everybody. Mr. Brawleck's own testimony at trial, again, at excerpts 216, says all medical providers that he had, and all means all. I don't think there was any misstatement made that could have been stricken, and certainly no statement was made that was prejudicial to the extent that this court's precedent discusses being reversible error. And I didn't hear anything either today from Mr. Brawleck's counsel that would explain how any statement that was made or any of the arguments that he's made today would be prejudicial or made that type of showing to show that there was sufficient prejudice to reverse the jury's judgment in this case. And then the court... Yeah, the court also asked to what extent were facts discussed that could have been stricken, again, I'm not aware of anything that would have been stricken in this case because it was fact-based or evidence-based. And there is some leeway allowed from the evidence, right? In arguments, the judge did instruct the jury in this case, and defense counsel's argument included the instruction and explanation of the instruction, the argument's not evidence. Asked the jurors to that, that was clear. I don't know what further instruction would have been appropriate, I don't think any would. Well, what further... I mean, the question is whether there were items, specific items that should have been either stricken or the jury should have been told to disregard them specifically, and the jury then would have been instructed not to consider anything that had been stricken. So, the instruction you refer to is certainly correct, the question is whether it's complete enough in the circumstances. Yeah, I understand, and I think in the circumstances of this case, it wouldn't have been appropriate for the judge to issue an additional instruction and ask the jurors to disregard evidence that's, or argument that's based on evidence. As I pointed out, I believe there is evidence to support the argument that was made in the case. And I would like to respond, Mr. Bollock's counsel suggested there was vouching for the defendant, and I just don't think the record supports that. In this case, certainly no improper vouching was made, it wasn't supported directly by testimony that was given during the trial. And I, that's really all the argument that I have unless the court has further questions for me. Thank you, counsel, we'll never begrudge you using less time than you've been allotted. So, you can go ahead and respond, looks like you've got about a minute left. Thank you, your honors, I'll be brief, just three key points. First, this issue of frustrated, counsel pointed to record page 216, and I'm well familiar. He certainly admitted he was frustrated, he did not admit he complained. And as someone who flew out here this weekend to be here today, I can tell you I was quite frustrated with TSA, but I didn't say a word. There's a distinct difference between frustration and complaint. Second, there's this issue of whether Nurse Didier laid the proper foundation to bring in the issue of policy. And I specifically will point to record 3ER308. She said, I don't handle grievances, that is a supervisory position. And she backed away from, your honors, we'll see as you review the record. She then backed away from any further knowledge. She certainly was not qualified at that point to either give expert testimony or even to act as a 30B6 witness to be able to give testimony as it pertained to the policy. What was that site, counsel? ER what? I'm sorry, your honor, 3ER308 is where she backed away. Thank you, counsel. Thank you, your honors. I thank counsel, both counsel, for their arguments. The case will be taken. I'd also, if I may. Go ahead. I'm sorry. Go ahead, counsel. Come back. No, no. I just wanted to express that it's very helpful to the court when we have pro bono counsel who are willing to take on cases to assist our work. Yes, thank you. I forgot. I haven't done this very often presiding, so Judge Graver's still teaching me how to do this. But yes, so thank you very much for taking on this very excellent argument provided by both parties. We'll be moving on to the next case.
judges: GRABER, BEA, VANDYKE